The State vs. Clifford.

THE STATE vs. CLIFFORD.

*April 19 — May 31, 1883.*

CRIMINAL LAW AND PRACTICE: *How causes brought to this court for review.*

A criminal case not brought to this court by exceptions reduced to writing *in a summary mode*, and allowed and signed by the judge, as required by sec. 4720, R. S., but found here by no authority or proceeding except the certified record proper accompanied by a *bill of exceptions* settled, signed, and certified in the usual manner, will be dismissed and the bill of exceptions stricken from the files.

The defendant, *Hartley Clifford*, was convicted of murder in the first degree in the circuit court for Rock county. A bill of exceptions was settled and signed by the judge and, with the record proper, was transmitted to this court. The cause was placed upon the calendar of the January term, 1883. A motion was thereupon made, on behalf of the state, to dismiss the cause for the reason that it had not been brought to this court by writ of error, or by exceptions as prescribed by sec. 4720, R. S., or by report as prescribed by sec. 4721, R. S.

In support of the motion there was a brief by the *Attorney General*, and oral argument by *H. W. Chynoweth*, Assistant Attorney General.

*W. H. Ebbets, contra.*

ORTON, J. This case is found in this court by no authority or proceeding except the certified record proper, accompanied by a bill of exceptions settled, signed, and certified in the usual manner of bills of exceptions in civil cases. The bill contains a very great number of exceptions in respect to the evidence, the instructions of the court, and other matters, and all of the evidence, and is very voluminous, and of about four hundred pages of manuscript. It pur-

ports to have been settled and signed during the term of the trial and before judgment. The attorney general moved to dismiss the case from this court and strike the bill of exceptions from the files on the ground that the case has not been properly brought to this court by exceptions reduced to writing *in a summary mode*, and allowed and signed by the judge, as required by sec. 4720, R. S. The motion has been allowed, but inasmuch as an important question of practice,. if not of jurisdiction, is involved in this motion, it is thought. proper that an opinion be given containing the reasons for this action of the court.

The above section of the statute, in accordance with which it is claimed by the learned counsel of the defendant the case was properly brought to this court, is as follows: " Any person who shall be convicted of an offense before the circuit court, being aggrieved by any opinion, direction, or judgment of the court in any matter of law, may allege exceptions to such opinion, direction, or judgment, which exceptions being reduced to writing in a summary mode, and presented to the court at any time before the end of the term, and if found conformable to the truth of the case, shall be allowed and signed by the judge, and thereupon all further proceedings in that court shall be stayed, unless it shall clearly appear to the judge that such exceptions are frivolous, immaterial, or intended only for delay; and in that. case judgment may be entered and sentence awarded in such manner as the judge may deem reasonable, notwithstanding the allowance of such exceptions." The next section provides that the judge, if the defendant desire it, may report the case to this court so far as necessary to present any questions of law which have arisen on the trial, which in his opinion shall be so important or so doubtful as to require the decision of this court, and that thereupon all proceedings in that court shall be stayed. The next two sections provide that the defendant may enter into a recognizance for

The State vs. Clifford.

his appearance in this court, or in default thereof that he shall be kept in prison, and that the clerk of the court below shall certify to this court a copy of the record and proceedings, and that this court shall decide the questions of law, and render judgment and award sentence, and make such order thereon as law and justice shall require, and that the proceeding shall not deprive the defendant of a writ of error for any error or defect appearing of record. The last section provides for settling and signing bills of exceptions in criminal as in civil cases, and was first enacted as ch. 108, Laws of 1869. These provisions, except the last section, were borrowed by the territorial revision of 1839 almost literally from the Revised Statutes of Massachusetts of 1836 as ch. 138, but which appears to have been first enacted as ch. 195, Laws of 1817, and again copied as ch. 79, Laws of 1820, and as ch. 130, Laws of 1832.

There was no law in this state which authorized the settling and signing of a bill of exceptions in criminal cases (and there was none in Massachusetts, at least before that time) until 1869, and there was no bill of exceptions in such cases at common law, and there is no English statute, so far as I know, which allows a bill of exceptions in criminal cases, except it may be in misdemeanors. In England there was no means of making exceptions taken on the trial of such cases a part of the record to be reviewed by a court of errors, and the only method of reviewing questions of law arising at the trial was on a case reserved by the judges, submitting such questions as were deemed important and doubtful to the decision of the court of errors, and that practice has been recently regulated by statute of 11 & 12 Vict. From that practice unquestionably arose the statute in Massachusetts above referred to, for reporting questions to the supreme court by the judge. The reason given for not allowing a bill of exceptions in such cases is that such a practice would cause too great a delay in criminal proceedings. 1 Chitty on Crim. Law, 622.

It was, no doubt, for that reason that the above provision for alleging exceptions and reducing them to writing in a summary mode during the term, and requiring them to be allowed and signed by the judge if according to the truth, was made, instead of a formal bill of exceptions, for a review of errors of law. This reason is by no means obviated, but rather rendered more apparent, by allowing a bill of exceptions to be perfected so as to make the exceptions a part of the record, after judgment or sentence; for in the mean time the defendant may be suffering imprisonment, and, if on a judgment which ought not to have been rendered by reason of error, unjust imprisonment, by the delay. The uncertainty and delay of such a practice ought, if possible, to be obviated, and alleging exceptions before judgment and during the term of the court in which the trial is had, in this informal and summary manner, is a most reasonable practice. The material difference between this manner of alleging exceptions, and the settling and signing of a bill of exceptions, will clearly appear by a brief consideration of the nature and history of the latter mode.

It was first adopted in England in civil cases only, by the statute Westminster 2, or ch. 31 of 13 Edw. I, to cure the great evil which before existed of the unlimited power of the judges to cause just such record to be made of the proceedings in a cause *ore tenus* as they saw fit, and of the very natural disposition of the judges, and the frequency of its apparent exercise, to suppress such rulings and opinions of the law as they preferred to be final with themselves, rather than submit them to the revision and reversal of a higher court. "The party whose pleading was overruled or exception disallowed was himself to write a statement of the facts, and to require the court to put their seals to it, which, if the statement was correct, they were bound and compellable to do. This statement so sealed was ultimately to form a part of the record, and as such was liable to revision by the court of errors. This written statement is called a bill of

exceptions." Great formality and certainty were necessary. It must set forth just so much and no more of the evidence and proceedings necessary to show the precise nature of the exceptions. It must be engrossed (formerly on parchment), and then tendered to the judge. Then the seal must be acknowledged or proved, and the bill then must be tacked to the record. See Raymond on Bill of Exceptions.

In this country the bill of exceptions is regulated by statute and rules, equal in particularity with the English statute in all matters of substance, and requires as much, if not more, time and care in its preparation, by notice, amendment, settling, and signing, and its office is the same as being made a part of the record, which may go to the court of errors by writ of error after judgment. When the record is thus completed the errors of law apparent thereon, whether arising from the original record or the bill of exceptions, may be reviewed on the writ. At common law, on the return of the writ, the errors intended to be relied on must be assigned, and there must be a joinder in error, and no errors not thus specially assigned would be noticed. And in criminal cases in England, even under the statute of 8 & 9 Vict., so important is the assignment of errors regarded, as a part of the proceeding on writ of error, the defendant, in cases of felony, is required to appear in person and assign errors. At one time it was held that the statute in New York had, in effect, abolished the assignment of errors on a writ of error in criminal cases, and, in that view, it was held that the court was prohibited from looking beyond or behind the record of the judgment. *Hayen v. People*, 3 Parker's Crim. R., 175. In this country, as a rule at least, an assignment of errors on the writ is necessary, as at common law; but it may be, and probably is, dispensed with in some of the states. In this state, in civil cases, it is rendered unnecessary by the rule requiring the appellant or plaintiff in error to serve upon the opposite party his brief containing the

points of error relied on, and in criminal cases it appears to have fallen into *disuse*.

In Massachusetts no bill of exceptions was allowed in criminal cases, and on writ of error an assignment of errors was necessary, so that on writ of error which brought up only the original record after judgment, or on special exceptions under the above statute after conviction but before judgment, all the exceptions brought up for review were specific, and specially brought to the attention of the prosecuting officer and the court before the hearing. *Booth v. Comm.*, 7 Met., 285. In this state, where, in practice at least, no assignment of errors has been required on the writ, even since a bill of exceptions after judgment has been allowed in criminal cases, the essential difference between a bill of exceptions and special exceptions alleged in a summary mode during the term, under the above statute, is far greater than in the state where the latter practice originated. It certainly was never intended that such special exceptions before judgment, and a regular bill of exceptions after, should exist together, for it may well be supposed that all of the exceptions that are material and important will be alleged before judgment, and if so, they cannot be again considered on bill of exceptions and writ of error after judgment. The practice, as we shall see in the state whence we derived the statute, was that the exceptions taken to the rulings of the court during the trial were taken up under this statute, and errors found only in the original record were taken up and considered only on the writ of error. But it is needless to consider the matter as it might be, and it is sufficient to consider it as it is, and the statute now since 1869 allows a bill of exceptions in criminal cases as in civil, and also the alleging of exceptions before judgment.

It may be that some cases in this court have been considered and decided upon bill of exceptions in the common form as special exceptions under this statute, which were

brought here by a writ of error before judgment, by dismissing the writ as being premature and by considering the exceptions reserved in the bill as if they had been specially alleged under the statute, by the consent or without objection of the defendant, as in *Crilley v. State*, 20 Wis., 231, and perhaps in some other cases, or where the exceptions were few in number and specifically alleged, and there was no question raised as to the practice. These cases have, no doubt, tended to obscure the real distinction between a bill of exceptions proper and special exceptions under this statute, by allowing, even in a few instances, the former to stand as the latter, but they cannot be used as an argument in favor of such an interchangeability of the two methods by the effect of the statute of 1869, which authorized a bill of exceptions in criminal cases, as well as the former method of alleging exceptions under the above statute and since that act was passed; for it seems that this court was under the impression that a bill of exceptions had always been allowed in criminal cases in this state, as it appears from the opinion of Chief Justice Dixon in *Benedict v. State*, 12 Wis.; 313, nearly ten years before the above statute was passed. It is said in that opinion: "If a party has any exceptions to take to the proceedings in his trial arising out of any matter which does not regularly appear in the record, he should make and file his *bill of exceptions*, which, being allowed by the judge, becomes a part of the record, of which he may avail himself *upon a writ of error;* or, in a proper case, he should see that such exceptions are embodied in a proper report to be made to this court pursuant to the provisions of the statute."

These two methods, however, are treated as materially different and distinct. The inherent difference in the two methods is apparent. The bill of exceptions is framed by the attorney so as to embrace every exception taken, and the court has nothing to do but to determine that they were

taken as stated in the bill, and then to sign it. It has no effect whatever upon the case itself. Very different is the statutory method of alleging exceptions. (1) The court must determine their truth; (2) they must be allowed and signed; (3) the court must determine whether they are frivolous, immaterial, or intended only for delay, or otherwise; (4) their allowance stays the proceedings; (5) the judge acts judicially, and not ministerially, as in signing a bill of exceptions, and exercises a judgment and discretion; (6) these exceptions are prepared in a *summary mode*, and must be allowed and signed before the end of the term in order to avoid delay and secure certainty by the more reliable memory of recent events; (7) they are *ex parte* and without notice, and are presented to the judge in brief form, with no more of the case or proceedings than necessary to present the specific exceptions in an intelligible manner; (8) these exceptions, when thus allowed and certified to this court by the clerk, are alone heard, irrespective of any other errors in the record; (9) they come to this court to be specifically sustained or overruled as matters of law, as in *Comm. v. Goldstein*, 114 Mass., 272.

A reference to some cases in Massachusetts during the time when these provisions remained the same as they are still in this state, will further illustrate the nature and office of these exceptions and their distinctive difference from a bill of exceptions. The exceptions alone are to be considered, and other errors of record must be brought up by writ of error. *Shattuck v. Woods*, 1 Pick., 170.

In *Comm. v. Peck*, 1 Met., 428, Chief Justice SHAW, in construing this statute, and holding that a motion for a new trial on the merits or on newly-discovered evidence might be entertained by the supreme court after such exceptions are filed therein, either before or after the exceptions are heard, makes that feature of the statute constitute one of the distinctions between exceptions thus allowed and a bill of ex-

ceptions or writ of error, because in the latter case that question may come up on bill of exceptions from the disallowance of a new trial in the court below, and a new trial may be awarded on grounds of law decided upon the whole record.

In *Comm. v. Morris*, 1 Cush., 391, the exception that the verdict is against evidence cannot be allowed. Exception to sustaining demurrer cannot be allowed. *Comm. v. Sallen*, 11 Gray, 52. No evidence should be embraced in the exceptions except what is necessary to show the error. *City of Boston v. Benson*, 12 Cush., 61. It must be observed that the statute in Massachusetts embraced also civil cases, so that exceptions may be allowed in this manner before judgment, and a bill of exceptions might be made after judgment and go up on writ of error. It was therefore held, in *French v. Bancroft*, 1 Met., 502, that an interlocutory order refusing to dismiss the writ, or an order refusing to set aside the verdict as against evidence, or a new trial, could not be made the subjects of summary exceptions, but must come up on bill of exceptions after judgment. *City of Boston v. Benson, supra.*

In *Comm. v. Stephens*, 14 Pick., 370, Chief Justice SHAW construes this statute, and in holding that the exceptions to be alleged and the questions of law to be reported by the judge were to be equally specific and brief, uses the following language: "Such bill of exceptions is not to be deemed *a general report* of the case, and is not considered to embrace any more of the facts proved than are necessary to raise the points of law relied upon. To any other part of the case the attention of the judge who allows the exceptions is not called."

In *Miller v. Miller*, 2 Pick., 570, Chief Justice PARKER says: "It is an easier and less expensive course to proceed by filing exceptions than by suing out a writ of error."

In *Buckland v. Charlemont*, 3 Pick., 173, the same chief

justice said: " The exceptions should be taken orally before
the verdict, in order that the judge may have an opportu-
nity to explain himself; " and Putnam, J., said: " If the point
is raised in the argument at the trial, I think it is sufficient.
If it is not suggested then, I think it is too late after the ver-
dict to suggest it for the first time."

The refusal to compel the attorney general to elect on
which count to try the defendant is not subject to exception.
*Comm. v. Sallen, supra.*   Formerly the whole record went to
the supreme court on exceptions, because the proceedings
were stayed in the court below by the allowance of the ex-
ceptions, and by recognizance the defendant was to appear
in the supreme court to abide the judgment or orders of that
court.   But now, by various amendments, the record remains
in the court below, and nothing goes to the court of errors
except these special exceptions, and the exceptions gave the
supreme court jurisdiction in all cases.   Lippitt's Crim. Law
of Mass., 334; *Comm. v. Dow*, 5 Met., 329.   That the ex-
ceptions are allowed and signed before the end of the term was
held jurisdictional in *Comm. v. Kane*, 108 Mass., 423; Lippitt's
Crim. Law of Mass., 375, 379.   The statute must be strictly
complied with.   *Doherty v. Lincoln*, 114 Mass., 362.   Unless
the exceptions are allowed and signed before the end of the
term the supreme court has no jurisdiction.   *Comm. v. Child*,
10 Pick., 252.   If there is not time to so comply with the
law on account of the case being on trial the last of the term,
the court may continue the case generally, so as to have the
exceptions allowed and signed literally during the term in
which the case is still pending, after trial and before judg-
ment.   *Barstow v. Marsh*, 4 Gray, 165; *Lewis v. Shattuck*,
id., 572.

In Pennsylvania, before 1856, there was no method of
correcting errors on the trial of criminal cases on appeal or
writ of error.   In that year an act was passed allowing the
defendant " to except to any decision of the court upon any

point of evidence or law, to be noted by the court and filed of record." Under this statute, very similar in some respects to the one under consideration, it was held that the plaintiff in error must show that he excepted at the time, so that the court and the opposite counsel could have an opportunity to correct it, and before it is entered of record the court must determine the materiality of the exception, and that it was not merely technical. *Fife v. Comm.*, 29 Pa. St., 429.

In *Gile v. Moore*, 2 Pick., 386, it was held that such exceptions could not be alleged in a bastardy case.

The state of Michigan adopted the Massachusetts statute in ch. 166, R. S. 1846, but no case is found in that state bearing upon this precise question. In *Shannon v. People*, 5 Mich., 37, it is held that the special exceptions allowed before judgment might stand as a bill of exceptions and as part of the record on a writ of error after judgment. In *Crofoot v. People*, 19 Mich., 254, the construction of the statute was treated by separate opinions of four judges. There was a motion to dismiss the exceptions because not allowed and signed until after the expiration of the term. Chief Justice COOLEY construed the statute to allow the judge to sign the exceptions after the term. The other judges construed it to require the allowance and signing during the term, but held it *directory* only. Chief Justice COOLEY, in scanning the statute, says: "These terms are proper and apt terms to apply to the taking of exceptions preparatory to incorporating them in a formal bill of exceptions; but they are not proper and apt terms to apply to the bill itself."

It will be observed that the Michigan court differs from both the Massachusetts supreme court and this court, in holding that the requirement of allowing and signing the exceptions before the end of the term is not imperative or jurisdictional. This court has expressly held that unless such exceptions are allowed and signed before the end of the term,

this court obtains no jurisdiction to hear the case; in *State v. Pooler*, 37 Wis., 305; and in *State v. Bierbach*, 47 Wis., 529, in harmony with the supreme court of Massachusetts in *Comm. v. Kane* and *Comm. v. Child, supra.*

In *Oleson .v. State*, 19 Wis., 560, the exceptions were not allowed and signed before the end of the term, and were, therefore, quashed.

In *State v. Anson*, 20 Wis., 651, the bill of exceptions was as formal and nearly as voluminous as the one in this case, with numerous exceptions scattered throughout the proceedings and evidence as in this bill; but unlike this bill, which is settled by consent of counsel and signed by the judge as an ordinary bill of exceptions in civil cases, that had the usual certificate of exceptions or questions reserved by the court, and of a case reported under sec. 4721, R. S., and yet this court refused to hear it, and remanded the case for judgment. This is strong authority that this bill cannot be treated as exceptions before the end of the term, even if the certificate is to that effect, and this bill is a more substantial departure from the statute in that it contains no *allowance* of the exceptions as being *material.* The language of the opinion in that case is copied in *State v. Snell*, 46 Wis., 525, as equally applicable to a case like this, as follows: " We are not to grope our way through a voluminous record in the dark, and examine the scores of questions raised in the court below to see whether the court has not erroneously decided some one of them." It is said in that case " that this is certainly not the *summary mode* contemplated by the statute." While speaking of that case we may say yet, as there said, that " we are not prepared to express a doubt of the jurisdiction in this case from the mode adopted," but we must regard it as a substantial irregularity which cannot be overlooked when the question is raised.

We will close the citation of authorities on this important and interesting question by a quotation from the opinion of .

The State vs. Clifford.

Mr. Justice TAYLOR in *State v. Bierbach, supra,* which perhaps should have been briefly cited as the decision of the question without further inquiry: " The practice under this section is to certify such exceptions at once to this court for its consideration. The proceeding is intended to be a *summary one,* and it is therefore required that the exceptions must be allowed before the end of the term at which the trial is had. When exceptions are not allowed and signed until after the term, judgment must follow the conviction, and the exceptions then allowed are made a part of the record, *as a bill of exceptions,* under the provisions of sec. 4724; and in order to enable this court to review such exceptions, settled after term *and allowed as a bill* of exceptions, the record containing such bill must be brought to this court by writ of error."

This clear and well-sustained construction of the statute would be sufficient authority for sustaining this motion if it had been necessary to the decision of the motion in that case, but we now make it authority because pertinent to this motion, *by adoption,* as establishing the correct practice in such cases. I have treated this matter more at length in consequence of the previous unsettled practice in bringing criminal cases to this court for review of errors on the trial. This court, in some cases, having entertained and considered exceptions embodied in a formal bill of exceptions, both before and since a bill of exceptions has been allowed by statute in criminal cases, settled and signed during the term and before judgment, as exceptions allowed under this statute, has encouraged too much such a practice. ¯Since a bill of exceptions is now allowed in criminal as in civil cases, and the record thus completed may come to this court on writ of error after judgment, and an assignment of errors has fallen into disuse, and the case is heard upon the record in manuscript, and no briefs need be made or served, the present case illustrates the necessity of adhering strictly to the statute when exceptions

are allowed before judgment by virtue of its provisions. If they had been specially allowed and their materiality considered by the court below, and they had come to this court with no more of the case than necessary to show the alleged errors, the attorney general and the court would be advised of the precise points to be made and the questions to be raised on the argument. As it is, this court must of necessity search through this voluminous bill of exceptions and pass upon all of the exceptions, however numerous or however material and important or otherwise.

This court, in a case of such a crime as murder, would not be justified in considering only such questions as the attorney of the defendant might see fit to raise *ore tenus* upon the argument, but must necessarily look through the whole record. The allegation of exceptions, and reducing them to writing in a *summary mode*, and having them allowed and signed by the judge during the term, under this section of the statute, may be done as briefly, as readily, and with as little delay as the report of the same questions of law by the judge under the next section. The exceptions may be minuted by the court when taken, and before the case is ended they may be readily brought together, with just enough of the history of the case as will make them intelligible, written out informally, and be allowed and signed by the judge. The practice is and was intended to be simple and plain, and easily understood and carried into execution. It was, perhaps, worse than unnecessary to have allowed a regular bill of exceptions in criminal cases, while this summary and better mode existed for correcting errors on the trial, and the practice under both together will be apt to lead to great expense, delay, and complications. May a case be brought to this court twice for the correction of errors on the trial, partly by this summary mode, and by bill of exceptions and writ of error after judgment, upon which other errors may be considered not included in the first exceptions? Other

difficulties might be suggested. It is to be hoped that here-
after the practice in the two modes may be kept separate,
and considered as settled. Too much strictness cannot be
required in criminal proceedings which concern the rights
of the accused as well as the safety and security of the
public. Delay may be equivalent to imprisonment, and im-
prisonment which is wrong, or unjust, or caused by an erro-
neous conviction, is without compensation or atonement.

*By the Court.*— The motion to dismiss the proceeding and
the bill of exceptions from this court is granted, and the
cause is remanded with direction to proceed to judgment on
the verdict.