State v. Nelson, 177 Wis. 84.

STATE, Plaintiff, vs. NELSON, Defendant.

*March 17—April 11, 1922.*

*Intoxicating liquors: Manufacture without intention to sell.*

Under sub. (3), sec. 1543, Stats. 1921, prohibiting the manufacture, sale, or transportation of intoxicating liquors; sub. (33), reciting that the legislation is an exercise of the power reserved by and granted to the state by the Eighteenth amendment to the federal constitution and should be construed to the end that use of such liquors as a beverage be prevented; sub. (7), providing for a permit to manufacture and sell liquors for medicinal purposes; and sub. (4), (5), and (6), providing for sale in pursuance of a government permit, or when used in preparations unfit for beverage purposes, or when de-alcoholized, and in view of an unsuccessful attempt in enacting ch. 441, Laws 1921, to legalize the manufacture of "home brew," the manufacture of intoxicating liquor containing more than one half per cent. of alcohol by volume for beverage purposes without a permit is prohibited.

CERTIFICATE OF DOUBT from the county court of Iowa county: ALDRO JENKS, Judge.   *Question No. 1 answered "Yes;" question No. 2 answered "No."*

Pursuant to the provisions of sec. 4721, Stats., two questions were certified to this court for decision, viz.: (1) Does the first count of the information state facts sufficient to

charge a criminal offense under the laws of this state?
(2) Did the court err in refusing to give the jury the fol-
lowing instruction, requested by defendant's attorney: "The
jury are instructed that under the law of this state a person
may lawfully manufacture intoxicating liquor without first
obtaining a permit, if it is not manufactured for sale or
with the intention of selling it or some part of it."

Count one of the information, among other things,
charges:

"That on the 22d day of September in the year nineteen
hundred and twenty-one, A. D., at said county, *Curtis Nel-
son* did manufacture intoxicating liquors without a permit,
to wit: certain wine containing alcohol greatly in excess of
one half of one percentum by volume, contrary to and in
violation of subsection (3) of section 1543, Wisconsin Stat-
utes, and against the peace and dignity of the state of Wis-
consin."

The cause was submitted for the plaintiff on the brief of
*R. T. Jackson,* district attorney of Iowa county, *William
J. Morgan,* attorney general, and *J. E. Messerschmidt,* as-
sistant attorney general, and for the defendant on that of
*M. J. Briggs* of Dodgeville.

DOERFLER, J.    The only question involved in this case is
whether, under the provisions of sec. 1543, Stats. 1921, a
person may legally manufacture intoxicating liquor contain-
ing more than one half of one percentum of alcohol by
volume, without a permit, where the only object and purpose
in manufacturing such liquor is to use the same for con-
sumption as a beverage, without any intention of selling the
same.

Sub. (3), sec. 1543, Stats. 1921, is as follows:

"(3) *Dealing in intoxicating liquor prohibited.*    After
this act becomes operative, the manufacture, sale or trans-
portation of intoxicating liquors, as herein defined, within,
the importation thereof into, or the exportation thereof

from the state of Wisconsin, except as may be herein or hereafter provided, is hereby prohibited."

Defendant's counsel contends first that the title to said sub. (3) is indicative of an intention upon the part of the legislature to prohibit the manufacture of intoxicating liquors only for the purposes of sale, and that the legislature did not intend to make illegal the mere manufacture of intoxicating liquors solely for beverage purposes.

A careful reading of the act discloses no ambiguity as to its meaning, and therefore the cases cited by defendant's counsel, viz. *U. S. v. Fisher,* 2 Cranch, 202; *Church of the Holy Trinity v. U. S.* 143 U. S. 457, 12 Sup. Ct. 511, and *Coosaw M. Co. v. South Carolina,* 144 U. S. 550, 553, 12 Sup. Ct. 689, are not applicable, for the reason that it is held in those cases that, where an act is so ambiguous as to render it open to construction, the title as well as surrounding facts and circumstances may be taken into consideration in determining the legislative intent.

That it was not the intention of the legislature to permit the manufacture of intoxicating liquors for beverage purposes is further made manifest by sub. (33), sec. 1543, Stats. 1921, which provides:

"(a) This chapter shall be deemed an exercise of the power reserved by and granted to the state by the Eighteenth amendment to the constitution of the United States and also an exercise of the police power of the state for the protection of the public health, peace, safety and morals of its people. It shall be liberally construed to the end that the use of intoxicating liquors as a beverage be prevented. . . ."

The basis of the state legislation involved is the Eighteenth amendment to the federal constitution and the exercise on the part of the state of the police power designed for the protection of the public health, peace, safety, and morals of

its people. The constitutional amendment and this class of legislation have been the result of many years of spirited public controversy, which has finally crystallized in the form of a constitutional enactment and of federal and state enforcement acts. In a democracy like ours the voice of the people becomes the law of the land, and must be respected and enforced in order to make such a form of government a success. To make the contention that there is any doubt whatsoever about the meaning of said sub. (3) is to ignore the plain meaning of a public act clearly expressed, and to permit to go unheeded the controversy all over this land for over a quarter of a century, expressly designed to effectuate the very purpose it was intended to bring about by such enactments.

It is further contended by defendant's counsel that sub. (7) would be contradictory and meaningless unless sub. (3) were interpreted to apply only to persons engaged in the manufacture for sale and not in the mere manufacture of intoxicating liquors.

Sub. (7), sec. 1543, among other things, provides:

*"Permits to manufacture and sell liquors.* (a) No one shall manufacture for sale, sell, purchase, transport or prescribe any liquor without first obtaining a permit from the commissioner so to do, except that a person may, without a permit, purchase or use liquor for medicinal purposes when prescribed by a physician as herein provided, and except that any person who in the opinion of the commissioner is conducting a *bona fide* hospital or sanitorium engaged in the treatment of persons suffering from alcoholism, may, under such regulations and conditions as the commissioner shall prescribe, purchase and use, in accordance with the methods in use in such institution, liquor to be administered to the patients of such institutions under the direction of a physician employed by such institution."

Sub. (4), under the title "Exception," authorizes the

manufacture, purchase, sale, etc., of intoxicating liquor by a compliance with the national prohibition act and pursuant to a permit obtained from the commissioner.

Sub. (5), under the title "What not subject to this act," authorizes the use of intoxicating liquors such as denatured alcohol as provided by the national prohibition act, medicinal preparations manufactured in accordance with certain formulas, provided they are unfit for use for beverage purposes, patented and proprietary medicines, toilet, medicinal, and antiseptic preparations, flavoring extracts, and syrups, vinegar, etc., provided they are not used for beverage purposes. And in all of the instances included in the exceptions, the person using alcoholic liquor may purchase and possess liquor for these purposes, but he is required first to secure proper permits therefor from the commissioner in accordance with the provisions of said act; and under said exceptions the act also provides that no person shall knowingly sell any of such articles under circumstances from which the seller might reasonably deduce the intention of the purchaser to use them for beverage purposes.

Sub. (6) of said act authorizes the manufacturer of non-intoxicating beverages containing less than one half of one percentum of alcohol by volume to develop in the manufacture thereof a liquid such as beer, ale, porter, or wine containing more than one half of one percentum of alcohol by volume, but before any such liquid is withdrawn from the factory or otherwise disposed of the alcoholic contents thereof shall, under such regulations as the commissioner may prescribe, be reduced below one half of one percentum of alcohol.

Taking the various subsections included in the act in question together and as a whole, the inevitable conclusion clearly fastens itself upon one's mind that the intention of the legislature in enacting this measure was to primarily prohibit not only the sale but the manufacture of intoxicating liquors for beverage purposes, and at the same time to

exclude from the operation of the act the manufacture, sale, and use of such liquors where they are designed to be used for sacramental or medicinal purposes or in the manufacture of certain other articles not designed for beverage purposes.

The history of the enactment of ch. 441, Laws 1921, particularly during the session of the 1921 legislature, where an express attempt was made to authorize the very thing contended for by the defendant's counsel herein, viz. the manufacture and use of home brew (which effort was frustrated by the legislature), is convincing beyond controversy that it was not the legislative intent to sanction the manufacture and use of intoxicating liquor known as home brew.

It therefore follows that question number 1 in the certificate of doubt must be answered by "Yes," and that question number 2 must be answered by "No."

*By the Court.*—The record is therefore remanded to the lower court with directions for further proceedings in accordance with this opinion and in accordance with the answers to the questions certified as herein determined.