# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2018AP1880 & 18AP2371 |

| | |
|---|---|
| COMPLETE TITLE: | David Stroede,<br>      Plaintiff-Respondent-Petitioner,<br>   v.<br>Society Insurance and Railroad Station, LLC,<br>      Defendants,<br>Jacob D. Tetting and West Bend Mutual Insurance Company,<br>      Defendants-Appellants. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 390 Wis. 2d 817,939 N.W.2d 614
PDC No:2020 WI App 8 - Published

| | |
|---|---|
| OPINION FILED: | May 18, 2021 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | December 9, 2020 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Milwaukee |
|   JUDGE: | Ellen R. Brostrom |

JUSTICES:

KAROFSKY, J., delivered the majority opinion of the Court, in which ZIEGLER, C.J., DALLET, and HAGEDORN, JJ., joined. REBECCA GRASSL BRADLEY, J., filed a dissenting opinion.
NOT PARTICIPATING:
ROGGENSACK, J., did not participate. ANN WALSH BRADLEY, J., withdrew from participation.

ATTORNEYS:

For the plaintiff-respondent-petitioner, there were briefs filed by *Keith E. Trower*, *Krista G. LaFave Rosolino,* and *Warshafsky, Rotter, Tarnoff & Bloch, S.C.*, Milwaukee. There was an oral argument by *Keith E. Trower*.

For the defendant-appellant Jacob D. Tetting, there was a brief filed by *Eric S. Darling, John Wilson,* and *Schmidt,*

*Darling & Erwin*, Milwaukee. There was an oral argument by *Eric S. Darling*.

For the defendant-appellant West Bend Mutual Insurance Company, there was a brief filed by *Monte E. Weiss* and *Weiss Law Office, S.C.*, Mequon. There was an oral argument by *Monte Weiss*.

2021 WI 43

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

Nos. 2018AP1880 & 2018AP2371
(L.C. No. 2017CV11072)

STATE OF WISCONSIN : IN SUPREME COURT

**David Stroede,**

      **Plaintiff-Respondent-Petitioner,**

  **v.**

**Society Insurance and Railroad Station, LLC,**

      **Defendants,**

**Jacob D. Tetting and West Bend Mutual Insurance Company,**

      **Defendants-Appellants.**

**FILED**

**MAY 18, 2021**

Sheila T. Reiff
Clerk of Supreme Court

KAROFSKY, J., delivered the majority opinion of the Court, in which ZIEGLER, C.J., DALLET, and HAGEDORN, JJ., joined. REBECCA GRASSL BRADLEY, J., filed a dissenting opinion.

ROGGENSACK, J., did not participate. ANN WALSH BRADLEY, J., withdrew from participation.

REVIEW of a decision of the Court of Appeals. *Reversed and cause remanded.*

¶1 JILL J. KAROFSKY, J. The focus of this case is Wis. Stat. § 895.529 (2017-18),[1] which immunizes and protects a

___

[1] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

"possessor of real property" from claims of trespassers for certain conduct. Under § 895.529(1)(a), a "[p]ossessor of real property" is defined as an "owner, lessee, tenant, or other lawful occupant of real property." We must determine whether Jacob Tetting's presence in a bar meets that definition.

¶2 The circuit court denied summary judgment to Tetting and to his insurer, West Bend Mutual, concluding that Tetting did not fit within the definition of a "[p]ossessor of real property" in Wis. Stat. § 895.529(1)(a). Specifically, the circuit court concluded that Tetting was not an "other lawful occupant of real property."[2] The court of appeals reversed the circuit court's decision, relying on dictionary definitions of "occupant" to determine that Tetting was an "other lawful occupant" and consequently entitled to immunity.[3]

¶3 We reverse the decision of the court of appeals because Tetting was not an "other lawful occupant of real property" under Wis. Stat. § 895.529. Accordingly, we uphold the circuit court's denial of both Tetting and West Bend Mutual's motions for summary judgment and remand the case for further proceedings.

---

[2] The Honorable Ellen R. Brostrom of the Milwaukee County Circuit Court presided.

[3] Stroede v. Soc'y Ins., 2020 WI App 8, ¶23, 390 Wis. 2d 817, 939 N.W.2d 614.

2

I.  FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶4  On September 20, 2014, David Stroede was drinking at the Railroad Station bar in Saukville, became extremely intoxicated, and punched another patron.  A bartender ordered Stroede to leave, and Stroede was escorted out of the bar. Tetting, an employee of the Railroad Station who was patronizing the bar with his family, saw Stroede being escorted out of the bar.  Several minutes later, after Tetting observed Stroede re-enter the bar, he approached Stroede, grabbed him by the shoulders, and walked him backwards towards the stairway at the entrance of the bar.[4]  Upon reaching the stairway, Tetting released Stroede, who fell down the concrete stairs and suffered serious injuries.

¶5  Stroede filed this lawsuit against Tetting, the Railroad Station, and the Railroad Station's insurer, Society Insurance.  Stroede alleged that Tetting used excessive force and was negligent in the way he walked Stroede out of the bar. Stroede later amended the complaint to add West Bend Mutual, Tetting's homeowner's insurance provider.

¶6  The defendants filed two sets of summary judgment motions against Stroede.  The first set of motions, not before us on appeal, was filed by Railroad Station and Society Insurance.  The circuit court concluded that Stroede was a trespasser at the time of the incident and that there was no

---

[4] The bar's entrance had an exterior door at ground level and several steps that ascended to a doorway that led into the bar area.

basis for Stroede's negligence claim against the two parties. Accordingly, the circuit court dismissed all claims against both parties. The other set of motions, which are the basis for this appeal, was comprised of motions for summary judgment filed by Tetting and West Bend Mutual, in which those parties asserted Tetting was entitled to immunity and did not owe a duty of care to Stroede, a trespasser. After oral argument on these motions, the circuit court accepted further briefing from Tetting and West Bend Mutual regarding whether Tetting was a "possessor of real property" under Wis. Stat. § 895.529.[5]

¶7 The circuit court conducted a second hearing in which it denied Tetting and West Bend Mutual's motions. The circuit court decided that Tetting was not a "possessor of real property" because he was not an "owner, lessee, tenant, or other lawful occupant of real property." Specifically, the circuit court concluded that Tetting was not an "other lawful occupant" of Railroad Station because lawful occupants must exert some degree of control over the property and must possess a right to exclude others.

¶8 Tetting and West Bend Mutual each filed an interlocutory appeal, asserting that the circuit court misinterpreted Wis. Stat. § 895.529. The court of appeals granted leave to appeal and reversed the denial of summary judgment, concluding that Tetting was an "other lawful occupant"

---

[5] West Bend Mutual joined in the arguments presented in "Tetting's Ongoing Motion for Summary Judgment."

4

and thus entitled to immunity.[6] <u>Stroede v. Soc'y Ins.</u>, 2020 WI App 8, ¶23, 390 Wis. 2d 817, 939 N.W.2d 614. Stroede petitioned this court for review, which we granted.

## II. STANDARD OF REVIEW

¶9 "We review a grant of summary judgment independently, applying the same methodology as the circuit court." <u>Pinter v. Village of Stetsonville</u>, 2019 WI 74, ¶26, 387 Wis. 2d 475, 929 N.W.2d 547. Summary judgment shall be granted where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2). This case requires us to interpret several provisions of Wis. Stat. § 895.529, which presents a question of law that we review de novo. <u>Noffke ex rel. Swenson v. Bakke</u>, 2009 WI 10, ¶9, 315 Wis. 2d 350, 760 N.W.2d 156.

## III. ANALYSIS

¶10 There are no genuine issues of material fact as it relates to this appeal,[7] and the parties agree that Stroede was a trespasser at the time of the incident. The narrow statutory

---

[6] The court of appeals also affirmed the circuit court's grant of summary judgment to Railroad Station and Society Insurance. <u>Stroede</u>, 390 Wis. 2d 817, ¶15. Stroede does not ask this court to review that determination.

[7] Whether Tetting was acting in the scope of employment, despite being a patron at the Railroad Station at the time Stroede was injured, is an open question. At the summary judgment hearing, the circuit court ruled that "there are enough competing facts on the issue of scope of employment that I just don't think as a matter of law I can find it either way." We take no position on the matter, as it is a live issue on remand.

interpretation question presented to this court is whether Tetting was an "other lawful occupant of real property" within the definition of "[p]ossessor of real property" found at Wis. Stat. § 895.529(1)(a).

¶11 Analysis of a statute begins with the language of the adopted text. State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. "Statutory language is given its common, ordinary, and accepted meaning, except technical or specially-defined words or phrases are given their technical or special definitional meaning." Id., ¶45. This language is "interpreted in the context in which it is used, not in isolation but as part of a whole, in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id., ¶46. Where statutory language is unambiguous, we do not consult extrinsic sources of interpretation, such as legislative history. Id.

¶12 The statute at issue, Wis. Stat. § 895.529, defines a "[p]ossessor of real property" as "an owner, lessee, tenant, or other lawful occupant of real property." It is undisputed that Tetting is not an owner, lessee, or tenant of Railroad Station. Therefore, we are focused on the phrase "other lawful occupant of real property," of which there is no statutory definition and this court has never provided an interpretation. Without such a definition, we look to the common meaning of the phrase. To that end, we often consult a dictionary in order to guide our interpretation of the common, ordinary meanings of words.

6

Noffke, 315 Wis. 2d 350, ¶10. The court of appeals, relying on several dictionary definitions of the word "occupant," reversed the circuit court and concluded that the phrase "other lawful occupant" means "anyone who is lawfully present on the premises at the time of the incident." Stroede, 390 Wis. 2d 817, ¶23. The dictionaries cited by the court of appeals do not unequivocally support its conclusion, because while the first definition in many of these online dictionaries aligns with the court of appeals' summation, other definitions, specifically those denoted as the meaning in "Law," support a narrower understanding.[8] Further, legal dictionaries such as Black's Law Dictionary define "occupant" in a way that supports only the circuit court's conclusion: "Someone who has possessory rights in, or control over, certain property or premises." Occupant, Black's Law Dictionary 1298 (11th ed. 2019).

¶13 Simply looking to dictionary definitions of the word "occupant," however, will not conclusively resolve the question

---

[8] See, e.g., https://www.dictionary.com/browse/occupant?s=t (stating the "Law" definition of "occupant" as "an owner though occupancy" or "one who is in actual possession"); https://www.thefreedictionary.com/occupant (observing the "Law" definition as "a person who has possession of something, esp an estate, house, etc; tenant" or "a person who acquires by occupancy the title to something previously without an owner"); https://www.lexico.com/en/definition/occupant (stating the "Law" definition of "occupant" as "a person holding property, especially land, in actual possession").

of statutory interpretation posed in this case.[9] Instead, we must look at the phrase "other lawful occupant of real property" in the context in which it is used, including the definitional list provided in Wis. Stat. § 895.529(1)(a) and in relation to surrounding subsections. See Kalal, 271 Wis. 2d 633, ¶46 ("[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes . . . .").[10] Considering the phrase "other lawful occupant of real property" in this context answers the question of statutory interpretation definitively and unambiguously.

¶14 Wisconsin Stat. § 895.529(1)(a) defines a "[p]ossessor of real property" as an "owner, lessee, tenant, or other lawful occupant of real property." Two canons of statutory construction are particularly useful in interpreting the definition provided for "possessor of real property" and

---

[9] As then-Chief Justice Abrahamson noted in her Noffke concurrence, "resort to a dictionary can be, as Justice Scalia has written of the use of legislative history, 'the equivalent of entering a crowded cocktail party and looking over the heads of the guests for one's friends.'" Noffke ex rel. Swenson v. Bakke, 2009 WI 10, ¶60, 315 Wis. 2d 350, 760 N.W.2d 156 (Abrahamson, C.J., concurring)(quoted source omitted).

[10] The dissent's reliance on standard dictionary definitions of "lawful" and "occupant" fares no better. The dissent also points to Wis. Stat. ch. 30 and 350 for uses of the term "occupant," as well as administrative code provisions and municipal ordinances regarding fire code mandates. Dissent, ¶¶30-31. It is unclear how any of this information is related to, or helpful in interpreting, the relevant text in Wis. Stat. § 895.529.

8

specifically the phrase "other lawful occupant of real property." The first canon, ejusdem generis, instructs us that "when general words follow specific words in the statutory text, the general words should be construed in light of the specific words listed. Thus, the general word or phrase will encompass only things of the same type as those specific words listed."[11] State v. Quintana, 2008 WI 33, ¶27, 308 Wis. 2d 615, 748 N.W.2d 447. The second canon, noscitur a sociis, similarly instructs us that "words are known from their associates."[12] Id., ¶35.

¶15 Both of these canons instruct us that the phrase "other lawful occupant of real property" should be limited by the terms that precede it: owner, lessee, and tenant. Those terms describe very specific groups of people and signify some degree of control and responsibility for the real property. See Owner, Black's Law Dictionary 1331, ("Someone who has the right to possess, use, and convey something; a person in whom one or more interests are vested."); id. at 1769 (defining "lessee" as "Someone who has a possessory interest in real or personal property under a lease."); id. at 1086 (defining "tenant" as "Someone who holds or possesses lands or tenements by any kind of right or title."). Those terms suggest that an "other lawful occupant of real property" is a person who, like an owner,

---

[11] Ejusdem generis is Latin for "of the same kind or class." Ejusdem generis, Black's Law Dictionary 654 (11th ed. 2019).

[12] Noscitur a sociis is Latin for "it is known by its associates." Noscitur a sociis, Black's Law Dictionary 1274.

9

lessee, or tenant, has possession or control of the real property. Further, the word "other" connects "lawful occupant" to the previous three terms. Reading the phrase within the context of the other terms provided in the definition of "possessor of real property," an "other lawful occupant of real property" must be someone who has possession of or control over a premises.

¶16 Reviewing the subsection as a whole further supports this conclusion. Wisconsin Stat. § 895.529(1)(b) defines "trespasser" as "a natural person who enters or remains upon property in possession of another without express or implied consent." (Emphasis added.) This definition suggests that a possessor of real property, including an "other lawful occupant of real property," is someone who has the ability to give and withdraw consent.

¶17 This conclusion is further bolstered when we consider that we seek to interpret the term "possessor of real property." Black's Law Dictionary defines "possession" as "[t]he fact of having or holding property in one's power; the exercise of dominion over property" and the "right under which one may exercise control over something to the exclusion of all others." Possession, Black's Law Dictionary 1408. This definition supports the conclusion that an "other lawful occupant of real property" must have some control or dominion over the real property; mere presence is not enough.

¶18 Reading the statute so broadly as to categorize anyone and everyone who is present on a property to be an "other lawful

10

occupant of real property" would negate the other specific terms provided (owner, lessee, and tenant) because it would swallow those terms whole. Such a broad definition of "other lawful occupant of real property" would also render the legislature's selected terms and the word "possessor" meaningless because no actual possession would be required.[13] Reading the statutory language this way would lead to absurd results. Kalal, 271 Wis. 2d 633, ¶46 ("[S]tatutory language is interpreted in the context in which it is used . . . and reasonably, to avoid absurd or unreasonable results." (Emphasis added.)) As the circuit court commented in recognizing this absurdity, "effectively what Tetting is asking me to do is to divide the world into two camps; trespassers and non-trespassers, right? . . . Tetting is asking me to explode this statute wide open to cover anyone lawfully on the property which basically means anyone that is not a trespasser."

¶19 To summarize, reading the phrase "other lawful occupant of real property" in context demonstrates that such a person must have some degree of possession or control over the property and the ability to give and withdraw consent to enter

---

[13] The dissent's analysis fails, in part, because it disregards most of the terms in Wis. Stat. § 895.529, focusing exclusively on the term "lawful occupant." The dissent neglects to address the placement of the term "other" before "lawful occupant," and the fact that it precedes the three specific terms "owner, lessee, tenant." Our role is to interpret and apply the plain language of the statute as a whole, not only particular words and read them without context. Further, the dissent's analysis is void of any discussion about the term we are seeking to interpret: "possessor of real property."

11

or remain on the property.[14] In this case, nothing in the record indicates that Tetting, as a bar patron at the time Stroede was injured, had any possession or control over Railroad Station or that he had the ability to give or withdraw consent. For this reason, the circuit court was correct in concluding that Tetting was not an "other lawful occupant of real property."

IV. CONCLUSION

¶20 We reverse the decision of the court of appeals because Tetting was not an "other lawful occupant of real property" under Wis. Stat. § 895.529 and was therefore not entitled to immunity. Accordingly, we uphold the circuit court's denial of both Tetting and West Bend Mutual's motions for summary judgment and remand the case for further proceedings.

*By the Court.*——The decision of the court of appeals is reversed, and the cause is remanded for further proceedings consistent with this opinion.

¶21 ANN WALSH BRADLEY, J., withdrew from participation.

¶22 ROGGENSACK, J., did not participate.

---

[14] The parties provided the most apt example of a "lawful occupant" as a family member, like a grandparent, who moves in with her family. She is not a tenant, lessee, or owner, but she is residing at the residence and has the authority to invite guests to visit. That is, she has some degree of possession or control of the property.

12

¶23 REBECCA GRASSL BRADLEY, J. *(dissenting).* "Courts have sometimes ignored plain meaning in astonishing ways." Antonin Scalia & Bryan A. Garner, <u>Reading Law: The Interpretation of Legal Texts</u> 72 (2012). The majority opinion in this case presents yet another example. The majority misreads Wis. Stat. § 895.529 and impermissibly narrows the meaning of the phrase "lawful occupant." According to the majority, the phrase "lawful occupant" refers to "a person . . . [who] [has] some degree of possession or control over the property and the ability to give and withdraw consent to enter or remain on the property." Majority op., ¶19. None of the majority's limiting language appears in the text of the statute and this strained interpretation of the phrase is belied by its plain meaning. "Lawful occupant of real property" means precisely what it says: an individual who lawfully occupies the property——that is, an individual who is lawfully present on the premises. The majority's contrary interpretation privileges trespassers while erasing the statutory rights of individuals who are lawfully present on real property. The defendant, Jacob Tetting, was entitled to immunity under § 895.529 as a lawful occupant of the premises where David Stroede, a trespasser, was injured. I respectfully dissent.

I

¶24 On September 20, 2014, Stroede visited Railroad Station Bar in Saukville, Wisconsin. Stroede became highly intoxicated, punched another patron in the face, and urinated on himself. An employee at the bar instructed Stroede to leave and

escorted him outside. Shortly thereafter, without the permission of staff, Stroede reentered the bar, knocking over a table and shattering glasses. Tetting, an employee of Railroad Station visiting the bar with his family that night, witnessed Stroede return. Tetting approached Stroede and grabbed him by the shoulders, telling him that he was not allowed to be in the bar anymore. Tetting walked Stroede backwards towards the exit door, which was preceded by a short descending stairwell. Tetting released his grip on Stroede before reaching the stairs. Stroede took a step backward and fell down the stairs, suffering serious head injuries.

¶25 Stroede sued Tetting and his insurer, West Bend Mutual Insurance Company, arguing that Tetting negligently used excessive force in removing him from the bar.[1] Stroede did not assert that Tetting acted willfully, wantonly, or recklessly.[2] Tetting and West Bend Mutual filed motions for summary judgment, arguing that Tetting was entitled to immunity under Wis. Stat. § 895.529 because, as a patron of Railroad Station, he did not

---

[1] Stroede also sued Railroad Station Bar and its insurer, Society Insurance, arguing that Railroad Station negligently allowed Tetting to use excessive force on its premises. Railroad Station and Society Insurance filed motions for summary judgment. The Milwaukee County Circuit Court granted both motions, finding that Stroede was a trespasser and that Railroad Station did not owe Stroede a heightened duty of care.

[2] Stroede moved the circuit court to amend his complaint to add a claim for willful, wanton, or reckless conduct. The circuit court denied Stroede's motion. Stroede appealed this issue to the court of appeals, which affirmed the denial of Stroede's motion to amend his complaint. Stroede v. Soc'y Ins., 2020 WI App 8, ¶11, 390 Wis. 2d 817, 939 N.W.2d 614. Stroede did not appeal this issue to this court.

2

owe a duty of care to a trespasser.[3] Under § 895.529(1) and (2), a "lawful occupant of real property" "owes no duty of care to a trespasser," but may be liable to a trespasser if his conduct willfully, wantonly, or recklessly causes injury or death.

¶26 The circuit court denied Tetting's and West Bend Mutual's motions for summary judgment, holding that Tetting owed Stroede a duty of care, despite the fact that Stroede was a trespasser at the time of his injury. According to the circuit court, Tetting was not a "lawful occupant of real property," limiting the meaning of this phrase to people who have the right to exclude others from the premises, thereby denying immunity to mere patrons. The court of appeals reversed the circuit court's decision, holding that the phrase "lawful occupant" means "lawfully present," and concluding that Wis. Stat. § 895.529 provides immunity to patrons for alleged negligent conduct toward trespassers. Stroede petitioned this court for review of the court of appeals' decision.

II

¶27 Wisconsin Stat. § 895.529 governs the duty of care owed to trespassers. In relevant part, the statute reads:

(1) In this section:

    (a) "Possessor of real property" means an owner, lessee, tenant, or <u>other lawful occupant of real property</u>.

    (b) "Trespasser" means a natural person who enters or remains upon property in

---

[3] On appeal, the parties do not raise the issue of whether Tetting acted as an employee at Railroad Station on the night in question. This writing assumes that Tetting was a patron.

3

> possession of another without express or implied consent.
>
> (2) Except as provided in sub. (3), a possessor of real property owes no duty of care to a trespasser.

(Emphasis added.) Subsection (3) provides, in relevant part, that possessors of real property may be liable for willful, wanton, or reckless conduct toward trespassers. Reading these provisions together, a "possessor of real property" is immune from the negligence claims of trespassers. In this case, the circuit court found that Stroede was a "trespasser," and this finding is undisputed on appeal. Stroede asserts only negligence against Tetting. The only question before this court, then, is whether Tetting was a "possessor of real property." If so, he is statutorily immune from Stroede's negligence claim.

¶28 Under the plain text of Wis. Stat. § 895.529(1)(a), Tetting qualifies as a "possessor of real property." There is no dispute that Tetting is not an "owner, lessee, [or] tenant" of Railroad Station; however, at the time of Stroede's injury, Tetting was a "lawful occupant." "[S]tatutory interpretation 'begins with the language of the statute,'" which is "given its common, ordinary, and accepted meaning." State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoted source omitted). "If the meaning of the statute is plain, we ordinarily stop the inquiry." Id. The phrase "lawful occupant" plainly means just what it says: an individual who is lawfully occupying property——that is, an individual who is present on the premises in a lawful manner.

4

¶29 Dictionary definitions of the phrase "lawful" and "occupant" support this conclusion. Id., ¶¶53-54 (instructing courts to turn to dictionary definitions to help ascertain the plain meaning of statutory language); see also Noffke ex rel. Swenson v. Bakke, 2009 WI 10, ¶10, 315 Wis. 2d 350, 760 N.W.2d 156 ("A dictionary may be utilized to guide the common, ordinary meaning of words."). "Lawful" means what the average person would reasonably understand it to mean: something that is "within the law" or "allowed by law." Lawful, American Heritage Dictionary 996 (5th ed. 2011). "Occupant" likewise bears a common, ordinary meaning: "one that resides in or uses a physical space," such as someone who is an "occupant of a car." Occupant, American Heritage Dictionary 1218 (5th ed. 2011); see also Occupant, Oxford English Dictionary 1978 (6th ed. 2007) ("[a] person who occupies, resides in, or is in a place"); Occupant, Random House Unabridged Dictionary 1339 (2d ed. 1996) ("a person, family, group, or organization, that lives in, occupies, or has quarters, or space in or on something, [such as] occupant of a taxicab.").

¶30 Accordingly, the plain meaning of "lawful occupant" is someone who has permission or a right to be physically present on the premises. This meaning fully comports with our everyday understanding of these terms. Just as an individual is an "occupant" in a car, so too is an individual an "occupant" of a business while patronizing it. Similarly, when setting maximum occupancy limits in fire and building codes, states and municipalities use the term "occupants" to refer to individuals

5

occupying space. See, e.g., Wis. Admin. § SPS 314.01(g)1.b (applying statewide fire code mandates to facilities containing inflammable conditions endangering the "occupants" of buildings); City of Greenfield, Wis., Ordinance § 18.02 (for purposes of the city's fire code, defining "occupant" as "[t]he person or persons, who physically reside, work or are present in a facility"). It is the job of courts to interpret statutes "in accordance with their plain and obvious meaning," and the phrase "lawful occupant" means exactly what it says. State v. Smith, 184 Wis. 664, 668, 200 N.W. 638 (1924); see also Scalia & Garner, supra, at 69 ("Words are to be understood in their ordinary, everyday meanings[.]").

¶31 Other statutes also use the phrase "occupant" to refer to individuals physically present in a place. For example, Wis. Stat. § 30.67 mandates any "occupant" of a boat to file a written accident report when the operator is physically incapable of doing so. The same is true for Wis. Stat. § 350.15, which requires any "occupant" of a snowmobile to file a written report in the event of an accident when the operator is incapable of doing so. Neither of those provisions limit the word "occupant" to only those with an ownership or possessory interest in the property; to the contrary, each encompasses any individual who is physically present and using the property, along with the operator. See §§ 30.67 and 350.15. "When the legislature enacts a statute, it is presumed to act with full knowledge of the existing laws, including statutes." Mack v. Joint Sch. Dist. No. 3, 92 Wis. 2d 476, 489, 285 N.W.2d 604

6

(1979). The legislature uses "occupant" in its ordinary sense throughout the Wisconsin Statutes so that the citizens bound by the law may understand what it means.

¶32 As a lawful patron of Railroad Station on the night Stroede was injured, Tetting was a "lawful occupant" for purposes of Wis. Stat. § 895.529(1)(a). Accordingly, Tetting qualified as a "possessor of real property" under subsection (2) and was therefore entitled to a lower standard of care with respect to trespassers on the premises. § 895.529(2). Because the circuit court concluded (and no party disputes) that Stroede was a trespasser at the time he was injured, Tetting is statutorily immune from liability for negligence.

¶33 Contrary to the majority's opinion, see majority op., ¶18, interpreting the phrase "lawful occupant" to encompass patrons visiting a bar affords full meaning to the other terms in Wis. Stat. § 895.529(1)(a), thereby "giv[ing] reasonable effect to every word . . . in order to avoid surplusage." Kalal, 271 Wis. 2d 633, ¶46. Under the statute, "a possessor of real property" means "owner, lessee, tenant, or other lawful occupant of real property." § 895.529(1)(a). Giving "lawful occupant" its plain meaning does not deprive the words "owner," "lessee," or "tenant" of their meaning even though "lawful occupant" applies to any person lawfully occupying space on real property. Even though an "owner" may also qualify as an "other lawful occupant" when physically present on his own property, an "owner"——unlike a "lawful occupant" without an ownership interest——will remain immune from trespasser negligence suits

7

even when the owner is not present on the property. The same is true for both lessees and tenants. In this way, § 895.529 affords greater protection to "owners," lessees," and "tenants" than mere "lawful occupants." The statute immunizes the former categories of persons whether they are present or absent from the premises at the time the trespasser is injured, whereas "lawful occupants," logically, must occupy the premises in order for immunity to apply.

¶34 Despite the plain meaning of "lawful occupant," the majority concludes that "lawful occupant" refers to "a person . . . [who] [has] some degree of possession or control over the property and the ability to give and withdraw consent." Majority op., ¶19. None of this language appears in the text of the statute nor does any of it reflect the common, ordinary understanding of "lawful" or "occupant." The majority improperly rewrites the statute, arbitrarily limiting its scope in order to reach the absurd conclusion that a person lawfully occupying a place is not a "lawful occupant." This is akin to holding that roosters are not "animals" in order to protect purveyors of cockfighting from prosecution for cruelty to animals. Scalia & Garner, supra, at 72 (citing State ex rel. Miller v. Claiborne, 505 P.2d 732, 733 (Kan. 1973)).

¶35 In adopting its constrictive definition of "lawful occupant," the majority applies the ejusdem generis canon "with a rigidity that hamper[s] rather than help[s] the search for genuine textual meaning." Id. at 212. Courts must be mindful that "the doctrine often gives rise to the question how broadly

8

or narrowly to define the class delineated by the specific items listed," which underlies the question the parties ask us to resolve. Id. at 207. The canon "does not specify that the court must identify the genus that is at the lowest possible level of generality" as the majority in this case elects to do. Id. Instead, "[t]he court has broad latitude in determining how much or how little is embraced by the general term." Id. In making that determination, courts should consider each of the items in the list "and ask what category would come into the reasonable person's mind." Id. at 208. Only a lawyer would exclude roosters from the general term "animals" and only a lawyer would exclude permitted patrons from "lawful occupants" of property. If "lawful occupant" means "a person . . . [who] [has] some degree of possession or control over the property and the ability to give and withdraw consent to enter or remain on the property" as the majority says, majority op., ¶19, "words in themselves plain have been construed as bearing a meaning which they have not, and which ought not to have been ascribed to them." Scalia & Garner, supra, at 212 (quoting Anderson v. Anderson, [1895] 1 Q.B. 749, 755 (per Rigby, L.J.)).

¶36 The majority briefly mentions the associated-words canon, noscitur a sociis, accompanied by no analysis of it. Majority op., ¶14. Under this canon, "[t]he common quality suggested by a listing should be its most general quality——the least common denominator, so to speak——relevant to the context." Scalia & Garner, supra, at 196. The majority's construction does exactly the opposite, applying the most restrictive reading

9

of "other lawful occupant" to mean someone with "possession or control over the property and the ability to give and withdraw consent to enter or remain on the property" rather than its most general quality——someone with a lawful right to be there. Rather than mechanically reciting Kalal, the majority should have applied the ordinary-meaning canon it espouses, "the most fundamental semantic rule of interpretation" under which "[w]ords are to be understood in their ordinary, everyday meanings——unless the context indicates that they bear a technical sense." Id. at 69.

¶37 Rejecting the ordinary, everyday meaning of "lawful occupant," the majority imposes on anyone with a lawful right to be present in a place (but who does not own or control it) a duty of care toward a trespasser whose presence is unlawful. Invitees——individuals who "by virtue of an invitation . . . go[] upon the premises of another for the purpose of aiding, transacting, assisting, or furthering the business of such other"——are categorically excluded from Wis. Stat. § 895.529. Voeltzke v. Kenosha Mem'l Hosp., Inc., 45 Wis. 2d 271, 282, 172 N.W.2d 673 (1969). So, too, are house guests and frequenters—— individuals who have "a right to be in or about the place in question under circumstances which do not render [them] a trespasser." Wilson v. Evangelical Lutheran Church of Reformation of Milwaukee, 202 Wis. 111, 115, 230 N.W. 708 (1930); see also Wis. Stat. § 101.01(6). As a result of this misinterpretation of the law, a person present on property owned and controlled by others must now conform his conduct in

anticipation of a trespasser's intrusion. For example, the delivery man who leaves packages outside the door of a closed store must devise a different drop off location in order to protect the trespasser from tripping over the packages as he exits the store into which he intruded.

¶38 The absurdity of the majority's statutory interpretation becomes even more apparent upon extension to other circumstances. Under the majority's construction of Wis. Stat. § 895.529, the owner of a home would not owe a duty of care to a trespasser, but a grandmother visiting her grandchildren at the same house would. If a trespasser enters the property and trips on a child's toy left in the yard, the trespasser could recover damages against the grandmother, but not against the homeowner. Why would the visiting grandmother owe any duty to a trespasser, who had no lawful right to be there in the first place and whose intrusion could not be anticipated? Why would § 895.529 expose the grandmother to liability but immunize the homeowner? The majority doesn't explain.

¶39 The majority inexplicably draws the same distinction between patrons of businesses and their owners. By definition, an invitee is someone who enters a premises "for a purpose of mutual advantage or benefit both to the owner of the premises and to the person entering." Voeltzke, 45 Wis. 2d at 282. According to the majority, only the latter is categorically liable to trespassers despite both individuals having the lawful and mutually beneficial right to be on the premises. For

11

example, if a patron negligently spills a drink on the floor and a trespasser on the property slips and sustain injuries as a result, the majority would allow the trespasser to collect damages against the patron but not the owner, despite no appreciable difference between the negligent acts of the business owner and the patron. But for the trespasser's unlawful entry, the trespasser's injury would not have occurred; nevertheless, the majority overlooks the trespasser's misconduct in order to allow him recovery. Had the legislature drawn this distinction, the majority's conclusion in this case would comport with the law, assuming no constitutional infirmity in the statute. But in this case, the majority steps beyond proper judicial boundaries to recast the law in accordance with its own apparent policy preferences, rather than applying the law the legislature actually enacted.

¶40 "Society has an interest in punishing and deterring intentional trespassers beyond that of protecting the interests of the individual landowner." Jacque v. Steenberg Homes, Inc., 209 Wis. 2d 605, 620, 563 N.W.2d 154 (1997) (emphasis added). Doing so helps to "preserv[e] the integrity of the legal system." Id. In this case, the majority abandons this well-established principle, elevating the interests of trespassers over individuals lawfully on the premises. "[B]oth the individual and society have significant interests in deterring intentional trespass to land[.]" Id. at 617. As such, "our laws seek to encourage the [lawful use of land] and discourage the [trespass to land]." Mackenzie v. Miller Brewing Co., 2000

WI App 48, ¶92, 234 Wis. 2d 1, 608 N.W.2d 331. The plain language of "lawful occupant" in Wis. Stat. § 895.529 does just that: it protects individuals lawfully on premises, regardless of whether they own or control the land, and discourages the unlawful conduct of trespassers.

¶41 Under the plain language of Wis. Stat. § 895.529, Tetting was a "lawful occupant" of Railroad Station on the night Stroede was injured and should be afforded statutory immunity from Stroede's negligence claim. Tetting was physically present on the property as a patron and had a lawful right to be there. According to Stroede's complaint, Tetting did not act willfully, wantonly, or recklessly; the force he used in removing Stroede from the bar was merely negligent. As the circuit court found, Stroede was a trespasser at Railroad Station; therefore, no lawful occupant of the premises owed him any duty of care, except to refrain from conduct that willfully, wantonly, or recklessly causes injury or death. The majority's misreading of § 895.529 impermissibly gives Stroede an avenue for recovery against individuals lawfully on the premises despite Stroede's unlawful intrusion. I respectfully dissent.

13